UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN COLLIER, | ) | CASE NO. 5:12CV2937 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| OCWEN LOAN SERVICING, LLC, et al., | ) | ORDER |
| | ) | |
| DEFENDANTS. | ) | |

This matter comes before the Court on defendant Ocwen Loan Servicing, LLC's unopposed motion to dismiss counts one through five, part of count six, and counts seven through eleven of the complaint. (Doc. No. 5).[1] For the reasons that follow, defendant's motion is **GRANTED in part**.

## I.   BACKGROUND

On October 26, 2012, plaintiff John Collier ("Collier" or "plaintiff") sued defendant Ocwen Loan Servicing, LLC ("Ocwen" or "defendant") and three unidentified "John Doe" defendants in the Summit County Court of Common Pleas. *Collier v. Ocwen Loan Servicing, LLC*, No. 2012-10-6025 (Ohio Ct. C.P. Summit Cnty.) (J. Hunter); (Compl., Doc. No. 1-1). On November 28, 2012, Ocwen removed the matter to this Court pursuant to 28 U.S.C. §§ 1441, 1331, and 1332. (Doc. No. 1.) Plaintiff did not object to removal.

---

[1] The motion to dismiss was electronically filed and served on December 5, 2012. Pursuant to LR 7.1(d), plaintiff's opposition was due 30 days later on January 4, 2012. Plaintiff neither filed an opposition by that date, nor sought prior leave to extend the deadline.

The complaint alleges that, in 2004, Collier obtained a $60,000.00 mortgage loan on a residence located at 617 Massillon Road from Popular Mortgage ("Popular"), and that Popular withheld $20,245.88 of the loan proceeds in a "suspense account." (Doc. No. 1-1 at 9, 11.) Collier asserts that the funds in the suspense account were to be released to him when he finished remodeling a portion of the Massillon Road residence.

Popular purportedly sold Collier's loan to Litton Loan Servicing ("Litton"), which was then acquired by Ocwen. Collier claims that when he finished the remodeling project and sought release of the suspended funds, Litton refused to release the funds "without justification or excuse," and Ocwen thereafter continued to refuse to disburse the remaining loan proceeds. (*Id*. at 10.)

In 2010 or 2011, Collier fell behind on the outstanding loan obligation and Ocwen threatened foreclosure, but no such foreclosure action was ever initiated. Collier contends he repeatedly responded to requests by Ocwen for proof of required insurance coverage and for confirmation that the property was not abandoned. On November 4, 2011, Collier wired $4,281.31 to Ocwen in complete satisfaction of the arrearages and late fees on the loan. Thereafter, he alleges Ocwen "did cause and allow Does to perform certain maintenance on the exterior and interior of the residence[,]"as evidenced by billing by Ocwen to Collier for the maintenance. (*Id*. at 11.)

Collier states the "Does" broke into the house without his knowledge or consent and caused "substantial damage" to the home and stole tools and other personal items from the residence. When these "Does" returned to the house, "a confrontation ensued." The "Does" "claimed authority to be there and threatened Plaintiff that they would call the police, but left without any such report having been made." (*Id*. at 12.) Collier subsequently called the police

2

and filed a report regarding the incident and the missing property. He asserts Ocwen was notified of these events and acknowledged that it hired the "agents to secure the property," but has repeatedly refused to disclose their identity. (*Id.*)

On these facts, the complaint alleges violations of the Real Estate Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602 *et seq.* and 12 C.F.R. § 226.2, the Ohio Civil RICO Act ("Ohio RICO"), Ohio Rev. Code § 2923.31 *et seq.*, as well as claims for negligent and/or intentional misrepresentation, breach of fiduciary duty, civil conspiracy, breach of contract, conversion, conspiracy to commit fraud, and negligent and intentional infliction of emotional distress. (Doc. No. 1-1 at 13-26.) Plaintiff seeks an award of compensatory and punitive damages, costs, interest, attorney's fees, and injunctive relief. (*Id.* at 26.)

On December 5, 2012, Ocwen moved to dismiss Collier's RESPA, OCSPA, TILA, and Ohio RICO claims, and Collier's claims for negligent/intentional misrepresentation, breach of fiduciary duty, breach of contract, and part of his civil conspiracy claim. (Doc. No. 5.) Plaintiff has not opposed the motion.

II. **LAW AND ANALYSIS**

A. **Subject Matter Jurisdiction**

Before reaching the merits of a case, the Court is obliged to ensure it has subject matter jurisdiction. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, No. 99–2444, 2001 WL 549409, at *3 (6th Cir. May 16, 2001) (federal courts should no longer follow the practice of

assuming jurisdiction in order to proceed on the merits). Plaintiff's failure to object to jurisdiction does not relieve defendant of its burden to support federal subject matter jurisdiction. *Simon v. Wal-Mart Stores, Inc.,* 193 F.3d 848, 851 (5th Cir. 1999). Where it appears that a court lacks subject matter jurisdiction over a removed case, the court shall remand it to state court. 28 U.S.C. § 1447(c). Ocwen removed this case on the basis of federal question and diversity jurisdiction.

1. *Federal Question*

A federal court is conferred with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (alteration omitted). "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152 (1908).

The face of Collier's complaint clearly asserts Ocwen violated federal law. Collier specifically seeks relief under RESPA and TILA, alleging Ocwen violated RESPA by withholding and refusing to release the suspended mortgage funds, and that Ocwen violated TILA by charging a higher interest rate than was originally listed in the loan disclosure statement. (Doc. No. 1-1 at 13, 18-19.) Therefore, this Court may exercise subject matter jurisdiction over this action. Further, the Court has supplemental jurisdiction over plaintiff's state law claims because those claims arise out of the same operative facts as his RESPA and TILA

4

claims and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

2. *Diversity*

Diversity jurisdiction under 18 U.S.C. § 1332(a) confers federal courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ." 28 U.S.C. § 1332(a).

The relevant facts supporting diversity jurisdiction in this case are not disputed. Collier is an Ohio citizen, defendant Ocwen is a corporation with its principal place of business in Florida, and Collier seeks damages in excess of $500,000.00. (Doc. No. 1-1 at 8, 20.) Thus, the Court also possesses original jurisdiction over this action pursuant to § 1332(a).

Accordingly, Ocwen properly removed the case pursuant to 28 U.S.C. § 1441(a) and the Court will now turn to the pending motion to dismiss.

**B. Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n. 3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### C. Plaintiff's RESPA and TILA Claims are Time Barred

In count one, Collier alleges Ocwen violated RESPA's prohibitions against kickbacks and unearned fees, 12 U.S.C. §2607. In count seven, he alleges that Ocwen violated TILA, 15 U.S.C. § 1605 and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.18(d), when it improperly disclosed the finance charge on his mortgage by calculating the interest rate based on non-disbursed funds.

RESPA and TILA claims are both subject to one-year limitations periods, which begin to run on the date of the occurrence of the alleged violation. *See* 12 U.S.C. § 2614 (providing that a plaintiff may bring a claim under § 2607 within one year "from the date of the occurrence of the violation"); 15 U.S.C. § 1640(e) (providing that a damages claim under TILA must be brought within one year "from the date of the occurrence of the violation"). "A RESPA

6

violation occurs when the loan closing takes place." *Ford v. New Century Mortg. Corp.*, 797 F. Supp. 2d 862, 869 (N.D. Ohio 2011) (citing *Meyers v. ABN Amro Mortg. Grp., Inc.*, No. 05-70453, 2005 WL 2396991, at *2 (E.D. Mich. Sept. 28, 2005)); *Snow v. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003). Similarly, a violation of TILA occurs "when the lender and borrower contract for the extension of credit." *Ford*, 797 F. Supp. 2d at 869 (quoting *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973)).

The loan in this case was executed in 2004 and, therefore, the limitations periods expired in 2005. Collier, however, filed his complaint in 2012. Accordingly, because he filed outside the applicable limitations periods, these claims are time-barred, and Ocwen's motion to dismiss counts one and seven is granted.

### D. OCSPA

Count two alleges Ocwen violated the OCSPA by "committing unfair, deceptive and unconscionable acts and practices in connection with consumer transactions" by charging Collier interest on funds never disbursed, conspiring to illegally enter Collier's residence, stealing Collier's personal property, and causing damage to Collier's residence. (Doc. No. 1-1 at 14.) Count three seeks a statutory injunction against these acts and practices.

Ohio Rev. Code § 1345.02 provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction[,]" and further provides a non-exhaustive list of such prohibited acts or practices. Ohio Rev. Code § 1345.02(A)-(B). Section 1345.02(F) provides it is deceptive for a "supplier," in connection with a residential mortgage, to fail to provide disclosures required by law or to provide disclosures that include material misrepresentations. Likewise, Ohio Rev. Code § 1345.031, regulating residential mortgage consumer transactions, prohibits "suppliers" from committing unconscionable acts or

7

practices, before, during, or after the transaction, and provides a list of acts or practices considered unconscionable. Ohio Rev. Code § 1345.031(A)-(B).

Ocwen argues that Collier's OCSPA claims must be dismissed because servicing a mortgage loan is not a "consumer transaction" covered by the act, Ohio Rev. Code § 1345.01(A), and because neither a mortgage loan owner nor servicer is a "supplier" as defined in the act, Ohio Rev. Code § 1345.01(C).[2] Ocwen notes, however, that the Ohio Supreme Court has accepted these issues as certified questions from another court within this district, but has not issued a decision yet.[3] Accordingly, this Court will reserve a decision on counts two and three until such time as the Ohio Supreme Court resolves these matters and, therefore, Ocwen's motion to dismiss counts two and three of the complaint is denied without prejudice.

### E. Negligent, Intentional or Fraudulent Misrepresentation

Count four alleges Ocwen "entered into a relationship of trust and confidence with Plaintiff[,]" and that Collier "reasonably relied" on negligent and/or intentional misrepresentations made by the "Defendant Does" when they told him that they had a right to

---

[2] Under OCSPA, a "supplier" is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." Ohio Rev. Code § 1345.01(C). OCSPA expressly states, however, that a "supplier" does not include the assignee or purchaser of a residential mortgage loan for value, *unless* the assignee committed the violation or is affiliated with the original seller of the loan. Ohio Rev. Code §§ 1345.01(C), 1345.091.

[3] On appeal from the related cases, *State of Ohio v. Ally Financial Inc.*, No. 3:10–cv–02537 (N.D. Ohio May 18, 2011) and *Blank v. GMAC Mortgage LLC*, No. 1:10–cv–02709 (N.D. Ohio), the Ohio Supreme Court will answer the following questions:

> 1. "Does the servicing of a borrower's residential mortgage loan constitute a 'consumer transaction' as defined in the Ohio Consumer Sales Practices Act., R.C. 1345.01(A)?"
>
> 2. "Does the prosecution of a foreclosure action by a mortgage servicer constitute a 'consumer transaction' as defined in the Ohio Consumer Sales Practices Act., R.C. 1345.01(A)?"
>
> 3. "Is an entity that services a residential mortgage loan, and prosecutes a foreclosure action, a 'supplier ... engaged in the business of effecting or soliciting consumer transactions' as defined in the Ohio Consumer Sales Practices Act., R.C. 1345.01(C)?'"

*State ex rel. DeWine v. GMAC Mtge. L.L.C.*, No. 2011-0890, 129 Ohio St. 3d 1446 (Table) (Aug. 24, 2011).

enter his residence and "that they would call the police if he did not vacate." (Doc. No. 1-1 at 15.) Similarly, count ten, captioned "Breach of Contract," alleges Ocwen knowingly concealed information from Collier and made willful and malicious misrepresentations in the loan agreement upon which he justifiably and detrimentally relied.[4] Count eleven alleges Ocwen and the three Does conspired to commit fraud when they broke in to Collier's house, stating falsely that they had a legal right to do so and that Collier would be arrested if he interfered with their activities. Further, Collier alleges Ocwen wrongfully conspired to conceal the identity of the Does and aided them in evading arrest for the theft of his property.

The elements of negligent, intentional or fraudulent misrepresentation claims are essentially the same under Ohio law. *Ford*, 797 F. Supp. 2d at 873 (citing *Fifth Third Bank v. Cope*, 162 Ohio App. 3d 838, 848 (Ohio Ct. App. 2005)); *Carpenter v. Scherer–Mountain Ins. Agency*, 135 Ohio App. 3d 316, 327-28 (Ohio Ct. App. 1999). To succeed on either claim, a plaintiff must establish the following:

> (1) a representation, or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.

*Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 817 (S.D. Ohio 2007) (citing *Gaines v. Preterm-Cleveland, Inc.,* 33 Ohio St. 3d 54, 55 (1987)).

"A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff . . . ." *Ford*, 797 F.

---

[4] Although count ten is captioned "Breach of Contract," the allegations contained therein make no mention of any contract and focus exclusively on allegations of purported false statements and wrongful concealment. Accordingly, the Court will treat this claim as one for intentional misrepresentation and concealment.

9

Supp. 2d at 872 (citations and internal quotation marks omitted). "Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class." *Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (emphasis omitted) (citing *Haddon View*, 70 Ohio St. 2d at 157); *Gutter*, 22 Ohio St. 3d at 288-89). "This 'special' relationship does not exist in ordinary business transactions." *Id.* Further, "[t]he relationship between a . . . creditor and [a] debtor does not, without more, 'give rise to the existence of a duty necessary to maintain a negligent misrepresentation claim.'" *Ortega v. Wells Fargo Bank, N.A.*, No. 3:11CV01734, 2012 WL 275055, at *9 (N.D. Ohio Jan. 31, 2012) (quoting *Ford*, 797 F. Supp. 2d at 872 and citing *425 Beecher, L.L.C. v. Unizan Bank, Nat'l Ass'n,* 186 Ohio App. 3d 214, 230 (2010)).

Similarly, "an intentional misrepresentation claim based upon a concealment of fact will lie only if a duty to disclose exists." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 509 (6th Cir. 2003) (citing *Federated Mgmt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 738 (Ohio Ct. App. 2000)). "[A] duty to disclose arises primarily in a situation involving a fiduciary or other similar relationship of trust and confidence." *Andersons*, 348 F.3d at 509 (quoting *Federated Mgmt.*, 738 N.E.2d at 855). The debtor/creditor relationship, without more, is not a relationship that would give rise to a duty to disclose. *See Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 101 (1988).

Here, Collier has failed to allege any facts to support a relationship with Ocwen other than a normal debtor-creditor relationship and, therefore, has failed to state a claim for negligent misrepresentation or for intentional misrepresentation based on concealment.

Moreover, Collier's negligent and intentional or fraudulent misrepresentation claims fail because he has not pled any facts establishing he justifiably relied to his detriment on

any statement of fact. Other than the statement that the Does claimed to be working for Ocwen and had a right to enter his property, Collier does not allege the time, place or content of any false statement of fact made by Ocwen. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, Collier admits he did not rely on the Does' statements, indicating in his complaint that he disbelieved the Does and, in fact, called the police and filed a report regarding the incident and the missing items. (Doc. No. 12 at 5.)

Accordingly, for all of the foregoing reasons, Ocwen's motion to dismiss counts four, ten and eleven is granted and Collier's claims based on negligent misrepresentation and intentional or fraudulent misrepresentation or concealment are dismissed.[5]

**F. Breach of Fiduciary Duty**

In count five, Collier alleges Ocwen had a fiduciary relationship with him arising out of a contract to provide mortgage loan services and a duty thereby to represent his best interests throughout the mortgage transaction. (Doc. 1-1 at 16.) Collier asserts Ocwen breached that duty when it refused to release the loan proceeds, when it hired the Does to enter his property after he had cured the arrearages on the loan, damaging the house and stealing his personal property, and when it refused to disclose the identity of the Does, preventing their criminal prosecution. (*Id*. at 16-17.)

---

[5] Because plaintiff has failed to allege a fraudulent misrepresentation or concealment, his claim for conspiracy to commit fraud also fails. *Gosden v. Louis*, 116 Ohio App. 3d 195, 219 (Ohio Ct. App. 1996) ("[A]n underlying unlawful act is required before a civil conspiracy claim can be successful.") (citing *Minarik v. Nagy*, 8 Ohio App. 2d 194, 195 (Ohio Ct. App. 1963)).

11

Under Ohio law, the party asserting a breach of fiduciary duty must establish the existence of the duty, a breach of that duty, and an injury proximately resulting from the breach. *Hurst v. Enters. Title Agency, Inc.*, 157 Ohio App. 3d 133, 144 (Ohio Ct. App. 2004). A fiduciary relationship exists when "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 75 Ohio St. 3d 433, 442 (1996) (citation omitted). In Ohio, "a bank and its customers stand at arm's length in negotiating terms and conditions of a loan." *425 Beecher, L.L.C.*, 186 Ohio App. 3d at 230 (quoting *Blon*, 35 Ohio St. 3d at 101) (internal quotation marks omitted). "The relationship of debtor and creditor without more is not a fiduciary relationship." *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St. 2d 282, 286 (1979). If no fiduciary relationship is created by written contract, one may be found to have been created informally, "but this is done only when both parties understand that a special trust or confidence has been reposed." *Id.*

Here, the complaint alleges the relationship between Collier and Ocwen arose out of Ocwen's purported acquisition of Collier's mortgage loan. Assuming the existence of such a contract between Collier and Ocwen, however, the parties resulting relationship is not one that would give rise to a fiduciary relationship. *See Umbaugh Pole*, 58 Ohio St. 2d at 286; *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 WL 1256771, at *14 (N.D. Ohio Mar. 31, 2011) (no fiduciary relationship formed between mortgagee and bank where complaint simply alleged misrepresentation of loan terms and improperly applied payments and charged erroneous late fees). Further, the complaint is devoid of any allegations of facts to support the existence of an informally created fiduciary relationship. Without facts demonstrating that a fiduciary relationship existed, Collier cannot claim there was a breach of that relationship. Accordingly,

Ocwen's motion to dismiss count five is granted and Collier's breach of fiduciary duty claim is dismissed.

### G. Civil Conspiracy

Ocwen next moves to dismiss the portion of count six alleging it conspired with the predecessor lender in refusing to release the loan funds held in suspension and in charging Collier interest on those unreleased funds. (Compl. ¶ 57, Doc. 1-1 at 17.) "An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim." *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 825 (S.D. Ohio 2007) (citing *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App. 3d 371, 380 (Ohio Ct. App. 2000)). Having already dismissed each of Collier's claims asserting that Ocwen's refusal to release the loan funds or that the interest rate charged was unlawful, his claim for civil conspiracy based thereon must also be dismissed. *Id.*; *see also Gosden v. Louis*, 116 Ohio App. 3d 195, 219 (Ohio Ct. App. 1996). Accordingly, Ocwen's motion to dismiss a portion of count six is granted and that part of count six alleging a civil conspiracy between Ocwen and the predecessor lender is dismissed.

### H. Ohio RICO

Count eight alleges Ocwen, in concert with its predecessors and the Does, conspired to continue withholding loan funds while still charging interest on those funds in violation of Ohio's civil RICO statute, also known as the Ohio Pattern of Corrupt Activities Act ("OPCA"), codified at Ohio Rev. Code § 2923.31 *et seq*. (Doc. 1-1 at 19.)

The OPCA is modeled after the federal RICO statute, and courts "have found that the elements for an OPCA violation are the same as those for a [federal] RICO claim." *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 811 (S.D. Ohio 2006) (citing *Universal Coach,*

*Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 290 (Ohio Ct. App. 1993); *State v. Schlosser,* 79 Ohio St. 3d 329, 332 (1997)). To state a claim under the OPCA, a plaintiff must allege "(1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Universal Coach,* 90 Ohio App. 3d at 291 (citation omitted). The OPCA defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." Ohio Rev. Code § 2923.31(E). An "enterprise" is defined as "any individual, sole proprietorship, partnership, limited partnership, corporation . . . or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." Ohio Rev. Code § 2923.31(C).

Collier has failed to allege the commission by defendants of two or more prohibited criminal offenses or to demonstrate any "pattern of corrupt activity" or the existence of an "enterprise" as those terms are used in the OPCA. At most, Collier alleges Ocwen knowingly failed to correct either a prior loan servicer's or loan originator's incorrect withholding or failure to disburse the suspended loan funds. While such conduct could support a breach of contract action, these are not criminal acts. Further, although Collier alleges Ocwen hired the Does to burglarize his house, which would be a criminal act, there is no alleged connection between that criminal act and any other criminal act sufficient to form a pattern as required by the OPCA. Instead, Collier makes conclusory statements about a conspiracy and the

14

withholding of funds, such as "Defendant became a member of the conspiracy and demonstrated by actions and words an agreement to conduct and participate, directly or indirectly, in the affairs of the enterprise through a pattern of corrupt activity." (Compl. ¶ 72, Doc. No. 1-1 at 19.) These types of vague statements and conclusory allegations are insufficient, however, to support a claim under the OPCA. *Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1374 (6th Cir. 1991) (vague and conclusory allegations of fraud or concealment and about a course or pattern of conduct by the defendant or its agents in alleged enterprise, with no specific reference to criminal violations, insufficient to support a RICO claim). Accordingly, Ocwen's motion to dismiss count eight is granted and Collier's OPCA claim is dismissed.

### I. Breach of Contract

In count nine, Collier alleges a claim for breach of contract, which, under Ohio law, requires a plaintiff to demonstrate: (1) the existence of an enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages suffered by the plaintiff because of the breach. *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95, 108 (Ohio Ct. App. 1995); *Jarupan v. Hanna,* 173 Ohio App. 3d 284, 294 (Ohio Ct. App. 2007). To prove the existence of a valid contract, a plaintiff must prove all the essential elements of a contract, including an offer, acceptance, the manifestation of mutual assent, and "consideration (the bargained for legal benefit and/or detriment)." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (2002). A plaintiff must also show that there was a "meeting of the minds" and that the contract was definite as to its essential terms. *Episcopal Ret. Homes, Inc. v. Ohio Dep't of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991).

Here, Collier vaguely alludes to a contract with Ocwen but does not identify such a contract by name or a description, let alone indicate with any specificity the terms Ocwen

purportedly breached, and by what conduct Ocwen is alleged to have breached those provisions. The complaint states only that, "Based on the terms of the written agreements, Ocwen was obligated to provide a statutorily legal loan and services as promised. Ocwen's failure to comply with this contractual obligation constitutes a breach of contract." (Compl. ¶ 75, Doc. No. 1-1 at 20.) Such vague and conclusory allegations are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Ocwen's motion to dismiss count nine is granted and Collier's breach of contract claim is dismissed.

### III. CONCLUSION

For all the foregoing reasons, Ocwen's unopposed motion to dismiss is **GRANTED in part** and **DENIED in part**. Collier's RESPA, TILA, and OPCA claims (counts one, seven, and eight) and his claims for negligent and/or intentional misrepresentations (counts four and ten), breach of fiduciary duty (count five), breach of contract (count nine), and conspiracy to commit fraud (count eleven) are **DISMISSED**. Further, the portion of count six alleging a civil conspiracy to refuse to release funds and charging interest on unreleased funds is also **DISMISSED**. This case shall proceed therefore only as to Collier's claims alleging violations of OCSPA (counts two and three), a civil conspiracy between Ocwen and the unidentified Does (remainder of count six), conversion (count twelve), and negligent and intentional infliction of emotional distress (counts thirteen and fourteen).

**IT IS SO ORDERED**.

Dated: July 15, 2013

  **HONORABLE SARA LIOI**
  **UNITED STATES DISTRICT JUDGE**